# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HENRY L. KLEIN, *pro se* | * | CIVIL ACTION |
| | * | |
| *v.* | * | NO. |
| | * | |
| THE LOUISIANA OFFICE OF DISCIPLINARY COUNSEL | * | SECTION |
| | * | |
| | * | MAGISTRATE |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT REGARDING LOUISIANA DISCIPLINARY RULE XIX "...UNCONSTITUTIONAL AS APPLIED..."

### I.   ARTICLE III STANDING

1. Complainant Henry L. Klein has Article III standing pursuant to *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) in that he has suffered an injury in fact which is (a) concrete and particularized (b) actual or imminent (c) fairly traceable to the challenged action of the defendant, and (d) not the result of the independent action of some third party not before the court.

2. At the sole behest of the Louisiana Office of Disciplinary Counsel ("ODC"), on May 18, 2023, Klein was suspended for engaging in "overly-zealous" advocacy against **non-client** GIROD LoanCo; notwithstanding reciprocity, *vel non*, Complainant-Klein is entitled to the declaration sought.

3. The damage to Complainant-Klein is irreparable, ¶¶ 15-18, *infra* and *SEC v. Caledonian Bank*, 145 F. Supp. 3rd 290 (2015):

> "The power to investigate carries with it the power to defame and destroy. Judges rely on an agency to deploy this power conscientiously and accurately report the evidence collected in their investigations. **In that way, the integrity of the regulatory regime is preserved.**"

## II. JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, in that this action arises under the 1st, 5th and 14th Amendments, Article III and the Appointments and Supremacy Clauses of the United States Constitution, *inter alia*.

5. Pursuant to 28 U.S.C. § 2201(a):

> In a case of actual controversy within its jurisdiction . . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

6. The "...case of actual controversy..." pends in Section G at Docket 23-mc-1895 (SEALED).

7. Venue is proper in the United States District Court for the Eastern District of Louisiana, where the constitutional violations occurred.

8. Pursuant to FRCP Rule 57, Complainant-Klein is entitled to and will seek a "...speedy hearing..." on the declaration sought.

### III.   CITIZENS UNITED, CAPERTON AND NAACP V. BUTTON

9. This action does not contend that Rule XIX is unconstitutional on its face, only "...as applied..." to Complainant-Klein[1].

10. Particularly applicable is *Citizens United v. Federal Election Commission*, 558 U.S. 310, (2010), which dealt with public persons, political campaign contributions and matters already in the public domain by virtue (here) of Richard Ducote's July 17, 2019 blog: *Schlegel's Funds*, Exhibit A.

11. SCOTUS Application 21-1361's first Question is fundamental:

> Did the Louisiana Supreme Court err by failing to enforce *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), as to district judge Scott Schlegel, who was campaigning for Louisiana Supreme Court Justice and accepted $47,500 in contributions from the Kean-Miller law firm and its client, Texas Brine?

---

1   See, "...Constitutional avoidance...", *Ashwander v. Tennessee Valley Authority* 297 U.S. 288 (1936), Justice BRANDEIS Concurrence.

12. By any standard, this is a First Amendment case controlled by precedent from *NAACP v. Button*, 371 U.S. 415 (1963):

> **"It is well settled that a state may not, under the guise of prohibiting professional misconduct, ignore constitutional rights."**

13. The suspension presently before Section G is inextricably tied to the **false accusation** that Complainant-Klein made improper comments about a sitting judge without any evidence in support[2].

14. The following quote from Part III of *Citizens United* provides sage perspective to the May 18, 2023 *per curiam* suspension order:

> "Speech is an essential mechanism of democracy; it is the means to hold officials accountable to the people. In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential. The right of citizens to inquire, hear, speak and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office."

---

[2] It is anticipated that this action will be transferred to Section G as a related case pursuant to Rule 3.1.

4

## IV. *STIGMATA*

15. **All Fifty States:** the *stigmata* created by the Suspension Order will follow Complainant-Klein in the many states where he will be applying for *pro hac vice* enrollment[3].

16. **The District of Columbia:** Complainant's most cherished fora are the District of Columbia and the Court of Appeals for the D.C. Circuit, where he has been a member in good standing since February 22, 2016 and was privileged by having been sponsored by Judge Reggie B. Walton when he was sworn-in. Complainant has presented cases to Judges Walton, James E. Boasberg, Christopher R. Cooper and briefly to Colleen Kollar-Kotelly.

17. **Seventh Circuit Court of Appeals:** Complainant has had the misfortune of having been stricken from the rolls in the Seventh Circuit Court of Appeals where he was a member that bar since October 31, 1977.

18. **The District of New Mexico:** Complainant has also had the misfortune of having been stricken from the rolls in the District of New Mexico where he has been a member in good standing of that bar since February 12, 2018.

---

[3] Marc Antony's Friends, Romans, Countrymen speech, *Julius Caesar,* Act III, scene II:

> *The evil that men do lives after them;*
> *The good is oft interred with their bones;*

## V. SCOTUS WRITS INCORPORATED

19. Incorporated by reference are SCOTUS Writ Applications at Docket 20-1361, *Heisler v. Girod LoanCo*, 23-261, *Klein v. ODC* and 23-745, *Klein v. Louisiana Justices*.

20. For the Court's ease of reference, the cover page and Questions Presented by each writ are made Exhibits B, C & D.

## VI. FACTUAL BACKGROUND RE: JUDGE SCHLEGEL

21. Taken directly from Writ Application 20-1361, the following facts were part of the public domain for which Complainant was suspended:

> As a matter of first impression for the Justices, Petitioner provides the following preamble which sharply and efficiently focuses on Question Presented Number One and *Caperton*:
>
> **Chronology of Illegal[4] Campaign Contributions**

---

4   All allegations quoted to SCOTUS were taken from Candidate Richard Ducote's July 17, 2019 blog (statements never uttered by Complainant-Klein), Exhibit A:

> "Scott Schegel's team disclosed that his campaign took $25,000 from Texas Brine Co., a large Houston-based company involved in many Louisiana lawsuits which it stands to lose or gain millions of dollars. The $25K was all paid on July 1 and broken up into 5 payments of 5K each to avoid the 5K corporate contribution limit. His approving the $25K campaign contribution is an indefensible and arrogant lapse of ethics and judgment.

The pattern was repeated on July 23 — 6 days after the Ducote blog:

| | | |
|---|---|---:|
| July 1, 2019: | Texas Brine Sales and Distribution, LLC | $ 5,000 |
| July 1, 2019: | Texas Brine Company, LLC | $ 5,000 |
| July 1, 2019: | TBC Underground Services | $ 5,000 |
| July 1, 2019: | Underground Storage, LLC | $ 5,000 |
| July 1, 2019: | United Brine Services, LLC | $ 5,000 |
| July 23, 2019: | Texas United Management Corporation | $ 5,000 |
| July 23, 2019: | United Brine Pipeline Company | $ 5,000 |
| July 23, 2019: | Louisiana Salt, LLC | $ 5,000 |
| July 23, 2019: | Pure Salt, LLC | $ 5,000 |
| September 9, 2019: | Kean-Miller | $ 2,500 |
| Total Illegal Contributions: | | $ 47,500 |

22. The next Ducote quote made statements never uttered by Complainant but RECKLESSLY so suggested at the **unrecorded May 1, 2023 oral argument** to the Louisiana Supreme Court:

> "There is no doubt that much of Texas Brine's fate will be decided by the Louisiana Supreme Court in a number of appeals....There is no question that Texas Brine believes that Schlegel is a good investment for them. Why would a Texas outfit otherwise care who sits on the Louisiana Supreme Court?"

23. The next fact quoted at SCOTUS Docket 20-1361 was never mentioned in the suspension order, but clearly caused Complainant to "...harbor doubts about Judge Schlegel's partiality[5]..."

### Chronology of DENIALS by Judge Schlegel

| | |
|---|---|
| 08/20/19 | DENIAL of Exception of *Lis Pendens*. |
| 08/20/19 | DENIAL of Request for Stay. |
| 09/30/19 | DENIAL of Motion to Dismiss per *Henson*. |
| 09/30/19 | DENIAL of Motion to Dismiss per *Louisiana Paddlewheels*. |
| 09/30/19 | DENIAL of Request the Notes be Declared *Unenforceable*. |
| 01/02/20 | DENIAL of Motion for *Vacatur* of Executory Process Writ. |
| 06/03/20 | DENIAL of Motion per *Chambers v. NASCO*, 501 U.S. 32[6]. |
| 06/03/20 | DENIAL of Motion to file Document Under Seal. |
| 06/03/20 | ORDER PROHIBITING filings without *advance permission*. |
| 06/24/20 | DENIAL of Motion to Order Sterling Properties to *Account*. |
| 07/02/20 | DENIAL of Motion for More Definite Statement re *Contempt*[7]. |
| 07/14/20 | DENIAL of Leave to file Pleadings. |

---

5   This was why Complainant wrote: **The Constitutional Right to Think.**

6   The motion cited the **backdated** sheriff's deed to GIROD REO as a fraud.

7   Louisiana Code of Civil Procedure Article 223, cited in the rule to show cause, gave the Court authority to incarcerate Complainant on the spot, making criminal consequences loom large.

## VII. FACTUAL BACKGROUND RE: KEAN MILLER + GIROD + ODC

24. The Louisiana Supreme Court severely castigated Complainant for calling the Kean-Miller + GIROD + ODC combination an "unholy alliance" and a "Faustian Pact" a reference to the Opera "Faust" by Charles Gounod, a form of metaphoric advocacy that is often used without sanctions.

25. Louisiana Supreme Court Rule XIX, Section 18 provides: **G. Related Pending Litigation** ... "the processing of a disciplinary matter may be stayed because of substantial similarity to material allegations of pending criminal or civil litigation.

26. But there **was** pending civil **and** criminal litigation[8].

27. In 2020, ODC began communicating with Eric Lockridge, GIROD's lawyer with a multi-million axe to grind.

28. In January of 2021, using Lockridge as its only witness, ODC filed charges "...throwing the book..." at Complainant for violating Rules 3.1, 3.3(a)(1), 3.4 (c), 3.5(a) 3.5(b), 3.5(d), 4.4(a), 8.2(a), 8.4(c), and 8.4(d).

29. Although GIROD was not a client and Complainant was not GIROD's lawyer, ODC prosecuted the charges, violating Complainant's constitutional and civil rights to practice law and its own rules and guidelines.

---

8  The criminal litigation was no petty prosecution. Approximately fifteen felons have pled guilty or have been found guilty. FNBC CEO Ashton Ryan was found GUILTY on 43 counts and has been sentenced to 14 years.

## VIII. "...BEING SUBJECTED TO AN ILLEGITIMATE PROCESS LED BY AN ILLEGITIMATE DECISION-MAKER..."

30. In *Axon v. FTC* and *SEC v. Cochran,* 598 U.S. ___ (2023), Justice KAGAN's introduction is valuable — so much so that Complainant read the opinion the moment it became public, filed a supplemental brief the next day and provided seven courtesy copies for each Louisiana Justice.

31. The hand-delivery to each of the seven Justices, however, was ill-received; footnote 1 of Justice CRICHTON's opinion, complaining about too many filings, made this comment:

> "[the most recent filing was] a Motion to Dismiss Pursuant to SCOTUS Rulings at (sic) *Axon v. FTC* and *SEC v. Cochran* and for Further Relief' **(a repetitive, albeit largely unclear, filing urging this Court to investigate alleged collusion between the Office of Disciplinary Counsel and Girod, a party in the underlying litigation)."**

32. That said, the first page of Justice KAGAN's opinion is valuable:

> In each of these two cases, the respondent in an administrative enforcement action challenges the constitutional authority of the agency to proceed. . . And one respondent attacks as well the combination of prosecutorial and adjudicatory functions in a single agency. The challenges are fundamental, even existential. They maintain in essence that the agencies, as currently structured, are unconstitutional in much of their work.

10

33. Later in the opinion, at page 13, the following aspect of *Axon/Cochran* fits *Klein v. ODC* perfectly:

> "The claim is about subjection to an illegitimate proceeding, led by an illegitimate decision-maker."

34. For the reasons that follow, Rule XIX is the infirm proceeding and ODC Deputy Paul Pendley is the infirm decision-maker[9].

### IX. SUPREME COURT RULE XIX.

35. Section 2(A) of Rule XIX provides:

> Agency. There is hereby established one permanent statewide agency to administer the lawyer discipline and disability system. The agency is a unitary entity. While it performs both prosecutorial and adjudicative functions, **these functions shall be separated within the agency insofar as practicable in order to avoid unfairness.**

36. That did not occur, an "as applied" violation; Paul Pendley played conflicting roles, twice seeking authority to bring charges after they were denied as having a "chilling effect" on advocacy; he was the investigator, then the prosecutor of the facts he investigated; then the advocate for GIROD, there being no one else involved; he was an advisor to the chair on objections made by Complainant (all denied); he was the only Deputy on the case.

---

9   Complainant is more comfortable with "infirm" as opposed to "illegitimate".

37. In the *Bandimere v. SEC* (844 F.3d 1168 (2016)) dissenting opinion by 10th Circuit Judges LUCERO and MORITZ, the point is made as follows:

> "[ALJs] are vested with duties of administration and at the same time they are given important judicial work. **The evils resulting from this confusion of principles are insidious and far-reaching.** Pressures and influences properly enough directed toward officers responsible for formulating and administering policy constitute an unwholesome atmosphere in which to adjudicate private rights. . . . the same men are obliged to serve both as prosecutors and as judges. This not only undermines judicial fairness; it weakens public confidence in that fairness. **Commission decisions affecting private rights and conduct lie under the suspicion of being rationalizations of the preliminary findings with the Commission, in the role of prosecutor, presented to itself."**

38. On the subject of "private rights", Justice MARSHALL ruled as follows more than 200 years ago in *Ex Parte Burr,* 22 U.S. 529 (1822):

> *"The profession of an attorney is of great importance to an individual, and the prosperity of his whole may depend upon its exercise. The right to exercise it ought not to be lightly or capriciously taken from him"*

39. Section 3(D) of Rule XIX provides the powers of committee chairs, which include considering and deciding pre-hearing motions; in the case at bar, Complainant lost almost every pre-hearing motion that he made, not the least of which were discovery motions to see Paul Pendley's communications with his only witness, **Complainant's adversary**; before the anticipated Rule 57 speedy hearing, Complainant will insist on seeing everything he didn't see during the infirm process led by an infirm decision-maker.

40. On that same subject, Justice THOMAS' concurring opinion in *Axon* is controlling — which is why Complainant hand-delivered seven copies to the Louisiana Supreme Justices (truncated slightly):

> "I write separately, however, because I have grave doubts about the constitutional propriety of Congress vesting administrative agencies with primary authority to adjudicate core private rights with only deferential judicial review on the back end . . . . As I have explained, when private rights are at stake, full Article III adjudication is required. Private rights encompass life, liberty, and property so called because they belong to particular men as individuals not dependent upon the will of the government . . . . which helps to explain why Marbury v. Madison stands for the importance of private rights. . . . Cases involving deprivations life, liberty, or property constitute a 'core' of cases that . . . must be resolved by Article III courts — **not executive adjudicators dressed up as courts**"

41. Justice THOMAS's comments apply to the Louisiana Supreme Justices (no disrespect intended) all non-Article III adjudicators of Complainant's most valuable "...core right..." — the May 27th 1968 degree of 𝔍𝔲𝔯𝔦𝔰 𝔇𝔬𝔠𝔱𝔬𝔯 and all the rights, honors and privileges appertaining thereto, followed by admission to the bar of the Louisiana Supreme Court.

### X.  SUI GENERIS

42. Perhaps the most egregious aspect of the Rule XIX process is found at Section 18(A): "Disciplinary proceedings are neither civil nor criminal but are sui generis", meaning (in Complainant's case), that anything goes; it would be better to have been a criminal than a respondent: a 55-year career was given less than 20 minutes to salvage; once "...subjected to the infirm process..." there is no escape, no motions for summary judgment or for judgment of dismissal as Complainant attempted as soon as he read *Axon*, and after that, *Loper v. Raimondo* and *Relentless v. Department of Commerce*.

43. The "unitary agency" is part of the diminishing administrative state with lesser rights, administered in cold blood.

### XI.  THE SUPREMACY CLAUSE

44. The Supremacy Clause, Article VI, Clause 2, provides:

> *This Constitution, and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land;* **and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.**

45. Complainant filed a Writ of Mandamus seeking to enforce the Supremacy Clause on January 8, 2024; denial does not speak to the merits of the Four Questions Presented made <u>Exhibit C</u> hereto.

### XII. RELIEF REQUESTED

46. Complainant cannot be reinstated without moving the Louisiana Justices to so allow; the May 18, 2023 *Per Curiam* paints a picture of a lawyer who should be tarred and feathered, not the same Henry L. Klein who fights fair and square and zealously for every client.

47. It is no happenstance that the 4 GIROD entities[10] which came to Louisiana to fleece victims of the FNBC collapse decided to SILENCE him by way of the suspension questioned here.

48. Pursuant to 28 U.S.C. 2201, augmented by Rule 57, Complainant respectfully asks for a speedy hearing and a declaration that the May 18, 2023 order is "...unconstitutional as applied..."

49. Further relief would have to come from 28 U.S.C. 1651, if necessary.

50. Nothing can cure the damage to Complainant's life, career, family and former clients.

---

10   The "4-GIRODs" are Girod LoanCo, LLC, Girod HoldCo, LLC, Girod REO, LLC and Girod Titling Trust, all created to vulture FNBC borrowers victimized by crime.

Very Respectfully Submitted,

*/s/   Henry L. Klein*
**Henry L. Klein**
6244 Marshal Foch Street
New Orleans, Louisiana 70124
504-439-0488
henryklein44@gmail.com